IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUSSELL WILLIAM BRADLEY,
      Plaintiff,

vs.                                  Case No.: 3:14cv653/LAC/EMT

DAVID WIGGINS, et al.,
      Defendants.
_____ /

## REPORT AND RECOMMENDATION

      Plaintiff, proceeding pro se and in forma pauperis, commenced this action by filing a civil complaint (doc. 1).  Upon review of the complaint, the court determined that Plaintiff failed to allege facts sufficient to invoke the court's subject-matter jurisdiction (*see* doc. 4).  The court advised Plaintiff of the requirements for establishing federal question and diversity jurisdiction, and directed Plaintiff to either file an amended complaint with allegations sufficient to invoke this court's jurisdiction, or file a notice of voluntary dismissal (*see id.*).  Plaintiff has now filed an amended complaint (doc. 5).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

## I.     BACKGROUND

      Plaintiff resided in Pensacola, Florida at the time he commenced this action (*see* doc. 2).  He is currently an inmate of the Escambia County Jail (doc. 5 at 2).[1]  Plaintiff names the following

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

persons as Defendants:  David and Peggy Wiggins, co-owners of T and P Auto in Andalusia, Alabama; Jessica Lenderman, an assistant public defender in Pensacola, Florida; Jennifer Frydrychowicz, a County Judge in Escambia County, Florida; and Fred Gerson Levin, a private attorney (doc. 5 at 1–2).  Plaintiff alleges he purchased a 1990 Dodge Ram Charger from the Wigginses in Alabama, and as soon as he crossed the state line from Alabama into Florida, the engine overheated, causing irreparable damage (*id.* at 5).  He alleges he returned to Alabama, where a mechanic replaced the engine with a second "bad" engine (*id.*).  Plaintiff alleges he drove the vehicle to Pensacola with his dogs, and the vehicle burst into flames (*id.*).  He alleges a local mechanic, Mr. Adkison, paid $2,000.00 out of his own pocket to "save" the vehicle (*id.* at 6). Plaintiff alleges the Wigginses told him and Mr. Adkison that because the vehicle was costing thousands of dollars to repair, they would "waive" the remaining amount that Plaintiff owed on it (*id.* at 7).  Plaintiff alleges that shortly thereafter, someone drugged him and caused him to be falsely arrested (*id.*).[2]  He alleges the vehicle was impounded, and his dogs were sent to the local animal shelter (*id.* at 8, 15).  Plaintiff alleges the Wigginses sent an employee from Alabama to Florida to "steal" the vehicle from the impound lot, which contained Plaintiff's briefcase, "law library," "law satchel," and evidence he was using in another federal lawsuit (*id.* at 8).

Plaintiff alleges he is the victim of false imprisonment, malicious prosecution, and other unspecified civil rights violations (doc. 5 at 3–4, 14).  He alleges Judge Frydrychowicz, the presiding judge in the criminal matters in which he is charged, and Ms. Lenderman, the assistant public defender representing him in those criminal matters, are being bribed by Mr. Levin (*id.* at 3–4).  Plaintiff alleges he is "a handicapped person because I'm pecuniarily raped," and that

---

[2] The court takes judicial notice of information available on the database maintained by the Clerk of the Circuit Court for Escambia County, Florida, viewed April 15, 2015, http://www.escambiaclerk.com.  *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).  The clerk of court's database indicates that Plaintiff was arrested on November 25, 2014, for Driving Under the Influence with damage to property or person.  *See* State v. Bradley, 2014-MM-006531.  The same day, he was arrested for making an obscene phone call. *See* State v. Bradley, Case No. 2014-MM-006530.  Both of those criminal matters are still pending.

Defendants are violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (*id.* at 13).  He also alleges that Defendants are violating the Internal Revenue Code and RICO statutes (*id.* at 14, 16).  Plaintiff additionally asserts a state law claim of theft against the Wigginses (*id.* at 16).  As relief, he seeks monetary damages against each Defendant (*id.* at 16).  He also requests an injunction requiring the Wigginses to return his personal property which was in the vehicle when they "stole" it, and requiring release of his dogs from the animal shelter into the custody of Mr. Adkison or another individual (*id.* at 9, 13, 15).

II.     ANALYSIS

        Plaintiff asserts two jurisdictional bases for this action.  He asserts the federal court has diversity jurisdiction because he and Defendants David and Peggy Wiggins are citizens of different states, and the amount in controversy exceeds $75,000.00 (*see* doc. 5 at 5–10).  Plaintiff also asserts that the federal court also has federal question jurisdiction over this action, because he claims a violation of his civil rights and the ADA (*id.* at 14, 16).

        A.     Diversity Jurisdiction

        Diversity jurisdiction exists where the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332; MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1239 (11th Cir. 2005) (noting that "[c]omplete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff").  Plaintiff alleges Defendants Peggy and David Wiggins are citizens of Alabama, and he (Plaintiff) is a citizen of Florida.  However, even if the Wigginses are citizens of a different state than Plaintiff, diversity jurisdiction is absent because Plaintiff alleges that the remaining Defendants, Judge Frydrychowicz, Ms. Lenderman, and Mr. Levin, are citizens of Florida.  Therefore, Plaintiff may not proceed pursuant to this court's diversity jurisdiction, and must present a substantial federal claim in order to invoke the district court's jurisdiction. *See* Wyke v. Polk Cnty. Sch. Bd., 129 F.3d 560, 566 (11th Cir. 1997).

        B.     Federal Question Jurisdiction

        As previously mentioned, Plaintiff asserts that the federal court also has federal question jurisdiction over this action, because he claims a violation of his civil rights and the ADA.  Plaintiff also references "R.I.C.O." throughout his amended complaint.

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  <u>Davis v. Monroe Cnty. Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

      1.    RICO

      Plaintiff peppers his amended complaint with references to RICO.  However, even a liberal construction of his complaint does not suggest he is bringing civil RICO action against Defendants. Plaintiff merely uses the term as an adjective to describe Mr. Levin and his alleged influence over Judge Frydrychowicz and Assistant Public Defender Lenderman, for example, he describes "undue[] influence[] (in the R.I.C.O. sense of the word influence)," "$R.I.C.O.$ style corrupt influence," "deep pocketed R.I.C.O. criminals," and "RICO criminal recidivists" (doc. 5 at 3, 4, 8, 14).

      Moreover, Plaintiff's conclusory and vague references are insufficient to state a plausible claim under the civil RICO statutes.  Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in the conduct of an enterprise's affairs "through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Thus, to establish a federal civil RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation omitted).  In addition, the plaintiff in a civil RICO action must also satisfy the requirements of § 1964(c), which requires (1) a showing of an injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.  *Id.*; 18 U.S.C. § 1964(c); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  "Racketeering activity" is defined to include specified predicate acts.  *See* 18 U.S.C. § 1961(1).  In order to prove a pattern of racketeering in a civil RICO case, "a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity."  Am. Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1290–91 (11th Cir. 2010). The predicate acts must also be related to each other, such as having the same or similar purposes, results, participants, victims, or methods of commission.  *See* Design Pallets, Inc. v. GrayRobinson, P.A., 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)).  The predicate acts must also be continuous, which can be shown by a series of related acts committed

over a substantial period of time.  *See* Design Pallets, Inc., 515 F. Supp. 2d at 1256; *see also*
Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (continuity is
satisfied by a closed period of repeated conduct or past conduct posing a future threat, but not by
isolated events).  Importantly, the Supreme Court has noted that "requiring" two acts does not mean
that two acts will always constitute a "pattern."  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479,
496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ("[Two] isolated acts of racketeering activity do
not constitute a pattern.").  "The target of [RICO] is thus not sporadic activity . . . .  It is this factor
of continuity plus relationship which combines to produce a pattern."  *Id.* (quoting S. Rep. No.
91–617, p. 158 (1969)); *see also* Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1397 (11th Cir.
1994) (each monthly pension payment based on defendants' illegal request was a separate, related
predicate act).

Additionally, a plaintiff must plead a RICO claim with the specificity required in Federal
Rule of Civil Procedure 9(b), which sets forth the pleading standard for claims of fraud.  Under Rule
9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2)
the time, place, and person responsible for the statement; (3) the content and manner in which these
statements misled them; and (4) what Defendants gained by the alleged fraud.  *See* Brooks v. Blue
Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citation omitted).
Because fair notice is the most basic consideration underlying Rule 9(b), the plaintiff who pleads
fraud must reasonably notify the defendants of their purported role in the scheme.  *See id.*, 116 F.3d
at 1381 (citing Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)).
Therefore, in a case involving multiple defendants, the complaint should inform each defendant of
the nature of his or her alleged participation in the fraud.  *Id.* (citations omitted).

Here, the factual allegations of the amended complaint do not allege any predicate acts
specified in § 1961(1) which amounted to or posed a threat of continued criminal activity.
Moreover, he does not plead his claim with the specificity required by Fed. R. Civ. P. 9(b).
Therefore, Plaintiff's civil RICO claim, to the extent he asserts one, is due to be dismissed.

2.    Civil Rights Violations

Section 1983 of Title 42 of the United States Code provides for the recovery of monetary damages for an alleged violation of a right secured by the Constitution or other federal laws.  Two essential elements must be present to establish a § 1983 claim:  (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See* Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt).

Plaintiff brings a § 1983 claim against Judge Frydrychowicz for allegedly depriving him of a fair trial and subjecting him to false imprisonment and malicious prosecution.  However, Judge Frydrychowicz  is absolutely immune from suit.  *See* Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); Dennis, 449 U.S. at 27; Sibley v. Lando, 437 F.3d 1067, 1071 (11th Cir. 2005). This immunity applies to claims for nominal damages.  *See* Simmons v. Conger, 86 F.3d 1080, 1084–85 (11th Cir. 1996).  Immunity may be overcome only (1) where the judge has not acted within her judicial capacity or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a "judicial" one relates "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in [her] judicial capacity." Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also* Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996).  The relevant inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362).  In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action she took was in error, was illegal, was done maliciously, or was in excess of her authority.  Stump,

435 U.S. at 355–57; *see also* <u>Mireles</u>, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice).  Rather, a judge is subject to liability only when she acted in clear absence of all jurisdiction, and knew or must have known that she was acting in such a manner. <u>Simmons</u>, 86 F.3d at 1084–85 (citing <u>Stump</u>, 435 U.S. at 356–57).  An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which she presides.  <u>Dykes</u>, 776 F.2d at 946–47 (citations omitted).  The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power."  48A C.J.S. Judges § 86.  Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly.  <u>Stump</u>, 435 U.S. at 357.  Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. <u>Harper v. Merckle</u>, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction).  The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded her jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power.  <u>Stump</u>, 435 U.S. at 357 (quotation omitted).

In the instant case, Judge Frydrychowicz's conduct in the criminal proceedings involving Plaintiff are functions normally performed by a judge.  Furthermore, because Plaintiff is a party in the cases over which Judge Frydrychowicz is presiding, he is dealing with Judge Frydrychowicz in her judicial capacity.  Moreover, Plaintiff does not allege, nor do the facts suggest, that Judge Frydrychowicz is acting in the complete absence of all jurisdiction.  Therefore, Judge Frydrychowicz is immune from liability for monetary damages.  Additionally, the court may not grant Plaintiff any injunctive relief against Judge Frydrychowicz, because an injunction would interfere with the judicial function of the state courts.  *See* <u>Wexler v. Lepore</u>, 385 F.3d 1336, 1339, 1341 (11th Cir. 2004).

Plaintiff cannot state a § 1983 claim against any of the remaining Defendants, because they are private parties.  A private party does not normally act under color of state law and is therefore not subject to suit under section 1983.  *See* <u>Dennis v. Sparks</u>, 449 U.S. 24, 27–29, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed.

2d 142 (1970).  "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."  Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).  Private parties may be viewed as state actors for section 1983 purposes if one of the following three tests is met: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise ('nexus/joint action test')."  Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citations and internal quotation marks omitted).

It is well established that attorneys appointed by the court to represent indigent criminal defendants do not act under color of state law when they represent clients.  See Polk Cnty. v. Dodson, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); Christian v. Crawford, 907 F.2d 808, 810 (11th Cir. 1990).  Therefore, Plaintiff may not maintain a § 1983 action against Assistant Public Defender Lenderman.

With regard to Defendants David and Peggy Wiggins, Plaintiff does not allege any facts suggesting the Wigginses acted under color of state law when they allegedly sold him a defective vehicle and then "stole" it from the impound lot after Plaintiff was arrested.  Therefore, any § 1983 claims that Plaintiff purports to bring against the Wigginses should be dismissed.

Finally, Plaintiff's conclusory allegations that Mr. Levin has bribed and otherwise unduly influenced everyone who works at the Escambia County Courthouse and in local law enforcement (see doc. 5 at 3–4, 10–12, 16) are insufficient to plausibly suggest that Mr. Levin qualifies as a state actor under the "nexus/joint action test," or either of the other two tests for state action.  Therefore Plaintiff's § 1983 claims against Mr. Levin should be dismissed.

3.   ADA Claims

Plaintiff alleges Defendants violated the ADA.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "Public accommodations" include any sales establishment and any lawyer's office.  *See* 42 U.S.C. § 12181(7)(E), (F).

To prevail on a discrimination claim under Title II or Title III of the ADA, a plaintiff must show that he is disabled, and that Defendants discriminated against him because of his disability.  *See* 42 U.S.C. §§12132, 12182.  The ADA defines the term "disability," with respect to an individual, as  (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102.

Here, Plaintiff alleges he is "a handicapped person because I'm pecuniarily raped" (doc. 5 at 13).  This allegations falls far short of the statutory definition of "disability."  However, even if Plaintiff is disabled,[3] he does not allege any facts that plausibly suggest that Judge Frydrychowicz, Assistant Public Defender Lenderman, Mr. Levin, or either of the Wigginses discriminated against him because of his disability.  Therefore, the amended complaint fails to state an ADA claim.

4.     State Law Claims

It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant.  *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).   Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484,

---

[3] In Plaintiff's motion for leave to proceed in forma pauperis, he states that his only source of income is "disability income" (*see* doc. 2, Affidavit of Financial Status).

1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett Cnty.</u>, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)).  Taking these factors into account in this case, the undersigned concludes that any state law claims asserted by Plaintiff, for example, his civil theft claims against the Wigginses, should be dismissed to permit him to pursue them in a more appropriate forum.  The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's federal claims against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B).

2.      That Plaintiff's state law claims be **DISMISSED without prejudice**.

3.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this <u>16th</u> day of April 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**